IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RONNIE ELVINGTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 3:18-cv-120-WKW-SRW |
| | ) | |
| PHENIX CITY BOARD OF EDUCATION, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**[1]

## I.   **Introduction**

Plaintiffs, Ronnie Elvington ("plaintiff") and Betsy Elvington ("plaintiff's wife"), sue multiple individual and municipal defendants for money damages, alleging state law claims and constitutional violations under 42 U.S.C. § 1983. *See* Doc. 60. Named as defendants in the second amended complaint are the Phenix City Board of Education ("Phenix BOE"), the Russell County Department of Human Resources ("Russell County DHR), Thomas Vickers ("Vickers"), Randy Wilkes ("Wilkes"), Antonio Griffin ("Griffin"), Kimberly Price ("Price"), Jason Sasser ("Sasser"), David Jones ("Jones"), Paul Stamp ("Stamp"), Mesha Patrick ("Patrick"), Patricia Alexander ("Alexander"), Brady Baird ("Baird"), John Donohue ("Donohue"), Fran Ellis ("Ellis"), Will Lawrence ("Lawrence"), and Jan Casteel ("Casteel"). The second amended complaint is comprised

---

[1] On April 19, 2018, Chief United States District Judge William Keith Watkins referred this matter to the Magistrate Judge for a decision or recommendation on all pretrial matters pursuant to 28 U.S.C. § 636(b). *See* Doc. 54.

of eight counts. *See id.* The first three assert federal claims under 42 U.S.C. § 1983: unreasonable seizure and detention in contravention of the Fourth Amendment and deprivation of liberty in violation of the Fourteenth Amendment by all defendants (count one); failure to train and supervise against all defendants except Price (count two); and failure to implement appropriate policies, customs and practices by all defendants (count three). *Id.* at 13–18. Counts four through seven assert state law claims of negligence (count four), breach of failure to provide a safe working environment (count five), breach of contract (count six), and premises liability (count seven). *Id.* at 18–21. In the final count, plaintiff's wife sues all defendants for loss of consortium (count eight). *Id.* at 21–22.

This matter is before the court on the motion to dismiss filed by Wilkes, Vickers, Sasser, Griffin, Jones, and Bonnie Burns[2] (the "school official defendants"), *see* Doc. 63; the motion to dismiss filed by Russell County DHR, Price, and Casteel (the "DHR defendants"), *see* Doc. 65; and the motion to dismiss filed by the Phenix BOE, Stamp, Patrick, Alexander, Baird, Donahue, Ellis, and Lawrence (the "Phenix BOE defendants"), s*ee* Doc. 67.[3] The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Personal jurisdiction and venue are not contested. The parties have fully briefed the motions, and the court takes the motions under submission on the pleadings without

---

[2] Burns is not named in the caption, or in the first paragraph of the second amended complaint. *See* Doc. 60 at 1. Plaintiffs allege Burns is employed by the Phenix BOE as director of special services and "is being sued in her individual capacity." *Id.*, ¶ 13.

[3] The defendants' reply briefs (Docs. 71, 74) argue that plaintiffs' response is untimely. The court has addressed that argument in an order deeming the plaintiffs' response to be timely filed. *See* Doc. 73.

oral argument. For the reasons that follow, the court concludes that the motions to dismiss are due to be granted as to plaintiffs' federal claims in counts one, two, and three; that all claims against the Russell County DHR should be dismissed; and that the district court should decline to exercise supplemental jurisdiction over the state law claims.

## II.   **Federal Rule of Civil Procedure 12(b)(6) Standard of Review**

In order to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly,* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

*Iqbal,* 556 U.S. at 678–79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.,* at 680; *Mamani v. Berzain,* 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme

Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs,* 486 F. App'x 3, 6 (11th Cir. 2012) (quotation omitted.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' … that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,* 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal,* 556 U.S. at 683 (internal editing and citation omitted.).

III.   **Factual Background**[4]

Plaintiff was employed by the Phenix BOE as a full-time paraprofessional working with special needs students at Central High School beginning in 2014. (Doc. 60, ¶ 24). His employment agreement with the school was signed by Wilkes as the superintendent of schools and approved by the Phenix BOE and its members. *Id.*, ¶ 25. In prior years, plaintiff

---

[4] These facts are gleaned exclusively from the allegations of the second amended complaint. *See* Doc. 60. They are the operative facts for the purpose of the court's ruling on the motions to dismiss.

served as a substitute teacher and was familiar with the students, the Phenix BOE defendants, and the school official defendants. *Id.*, ¶ 26.

The Phenix BOE defendants approved a student code of conduct that addressed behavior, attendance, and other matters. *Id.*, ¶¶ 27–28. Pursuant to the code of conduct, there were three levels of offenses: Class I-minor offenses, Class-intermediate offenses II, and Class II-major offenses. *Id.*, ¶ 28. The code of conduct expressly prohibited students from assaulting, threatening, or striking a school board employee or another student. The code also prohibited touching of other students. *Id.*, ¶ 29.

Plaintiff alleges that, prior to the subject incident, he expressed his concerns regarding the safety of students and employees by notifying the Phenix BOE defendants and school official defendants on several occasions regarding violent incidents involving K.U. and other students. *Id.*, ¶ 30. Plaintiff emailed school officials Vickers, Griffin, and Wilkes about dangerous situations involving several students. *Id.*, ¶ 31. Plaintiff spoke with board member Stamp several times about these issues. *Id.* Plaintiff alleges that the Phenix BOE defendants and school official defendants had notice of previous incidents involving the student K.U. and his violent behavior, as well as his history of inappropriately touching other students. *Id.*, ¶ 32. In a letter dated March 13, 2016 to Montray Thompson, which was copied to Wilkes, Burns, Vickers, and Griffin, plaintiff specifically relayed his safety concerns regarding the volatile and dangerous behavior of students T.R. and K.U. toward students and staff. *Id.*, ¶¶ 33–34.

On or around March 15, 2016, plaintiff underwent a surgical procedure in which a defibrillator/pacemaker was placed in his chest. *Id.*, ¶ 35. He remained out of work until

April 16, 2016. *Id.* On May 11, 2016, he was informed that his contract would not be renewed for the next school year. *Id.*, ¶ 36.

On May 19, 2016, when plaintiff was performing his job duties in a class, he was approached by K.U., who wanted to leave early. *Id.*, ¶ 37. Plaintiff told K.U. that school was almost over and he needed to remain seated. *Id.* With his back to K.U., plaintiff continued working. Plaintiff heard another student call out to him to "watch out." *Id.*, ¶ 38. Plaintiff alleges that when he turned around to see what was going on, K.U. pushed him up against the wall and punched him in the chest with a closed fist. *Id.*, ¶ 39.

In an effort to get K.U. off him, plaintiff restrained K.U. until the other teachers, Ms. McQuiston and Ms. Johnson, could reach him to assist. *Id.*, ¶ 40. The incident shook up plaintiff, and he went home for the day once the situation was contained by the other teachers present. *Id.*, ¶ 41.

Shortly thereafter, plaintiff received a call at his home from defendant Sasser, a Central High School assistant principal. *Id.*, ¶ 42. Sasser asked plaintiff to describe what happened and told plaintiff to stay out of school until he could discuss the situation with defendant Vickers, Central High School's principal. *Id.*

On May 20, 2016, plaintiff went to the school to discuss the situation with principal Vickers. *Id.*, ¶ 43. He was unable to locate Vickers, so he spoke with defendant Griffin, another Central High School assistant principal. *Id.* Griffin told plaintiff that he needed to discuss the situation with the school resource officer and instructed plaintiff to go home to wait for a call from the resource officer. *Id.*, ¶ 44. Before leaving for home, plaintiff gave

his school keys to Griffin and asked that he be put on leave without pay for the remaining week of the school year. *Id.*

Plaintiff claims he was not contacted by anyone from the school administration after that date. *Id.*, ¶ 45. He asserts that the Phenix BOE defendants and school official defendants failed to investigate the incident further, in violation of their own policies and procedures. *Id.* He alleges that their inaction was "willful and beyond their authority and discretionary functions." *Id.*

On June 21, 2016, plaintiff learned from his cardiologist that his pacemaker was not functioning properly, which plaintiff alleges was a result of its being dislodged when K.U. punched him in the chest. *Id.*, ¶ 46. On July 5, 2016, plaintiff underwent a second surgery to correct the positioning of his pacemaker. *Id.*, ¶ 47.

On July 8, 2016, defendant Price came to plaintiff's home to show him a report regarding an investigation of child abuse. *Id.*, ¶ 48. Price is employed by Russell County DHR as a case worker. *Id.*, ¶ 6. Price relayed the results of the investigation, which "indicated" child abuse of K.U. during the May 19, 2016 incident. *Id.*, ¶ 48. Plaintiff alleges that he was never notified or interviewed about the investigation. *Id.* Price presented plaintiff with a typewritten letter reflecting a determination of "indicated." *Id.* The letter was signed by Florence Bellamy, who has since been succeeded by Jan Casteel as the director and supervisor of the Russell County DHR. *Id.*

On July 13, 2016, plaintiff's cardiologist authored a letter stating that the plaintiff's pacemaker could have been dislodged by K.U.'s punch. *Id.*, ¶ 49. Additionally, documentation from the pacemaker itself indicated that it was, in fact, dislodged during the

relevant time frame. *Id.* Within ten days of Price's visit to advise plaintiff of the results of the investigation, plaintiff notified the Russell County DHR of his intention to contest the findings and request an administrative hearing. *Id.*, ¶ 50.

An administrative hearing conducted on March 20, 2017, concluded in plaintiff's favor, with the determination of "indicated" found to be incorrect because plaintiff was physically assaulted by K.U. *Id.*, ¶¶ 51–52.

Plaintiff alleges that, despite his giving multiple warnings to defendants regarding K.U.'s violent behavior prior to the incident's occurring, he and other classroom staff were told by school official defendants to overlook K.U.'s behavior because his parents had a lawyer who could cause trouble for the school system. *Id.*, ¶ 54. Plaintiff alleges that Wilkes, Burns, Vickers, and Griffin acted with deliberate indifference egregious enough to rise to the level of a constitutional violation when, although they were aware of K.U.'s propensity for violence, they did nothing about it. *Id.*, ¶ 53. Plaintiff alleges that their deliberate indifference, coupled with the failure of the Phenix BOE defendants and school official defendants to implement and follow established rules and regulations governing student conduct, resulted in the violation of plaintiff's constitutional rights. *Id.* Plaintiff made numerous reports regarding K.U., but he was told he could do nothing due to the student's behavioral disability. *Id.*

Plaintiff alleges that Russell DHR employees Casteel and Price failed to follow standard policies and procedures in failing to interview him before making a determination of "indicated," and that such failure violated Alabama law and cannot be considered to be within the performance of their discretionary duties. *Id.*, ¶ 56. He asserts that the Russell

County DHR had a policy, pattern, and practice of allowing its employees to fail to adhere to specified rules and procedures, which resulted in a violation of plaintiff's constitutional rights. *Id.*, ¶ 57. Plaintiff claims that he has suffered damages as a result of defendants' conduct, and he seeks compensatory and punitive damages against defendants. *Id.*, ¶¶ 58–59. Plaintiff's wife also seeks damages for loss of consortium. *Id.*, ¶ 60.

## IV.   **Plaintiffs' Claims**

### *A. Federal Claims*

In count one of the second amended complaint, plaintiff sues all defendants under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment based on alleged unreasonable seizures and detentions and a deprivation of liberty without due process. *Id.*, ¶¶ 63–68. In count two, plaintiff sues all defendants except Price (the DHR case worker) under § 1983, alleging that defendants promulgated a custom or policy of inadequate training and supervision that resulted in the deprivation of his constitutional rights. *Id.*, ¶¶ 69–77. He alleges that the Russell County DHR's inadequate training and supervision resulted in an incorrect and unfounded determination of "indicated." *Id.*, ¶ 70. He alleges that the school official defendants acted willfully and in bad faith by failing to take safety or corrective measures after being notified on numerous occasions of physical incidents as it relates to K.U. and other students. *Id.*, ¶ 71. The final § 1983 claim in count three sues all defendants for adopting and implementing policies and customs that allowed Price to conduct an investigation of child abuse without interviewing all involved persons. *Id.*, ¶ 79. Plaintiff claims that the manner in which the child abuse report was handled improperly violated his constitutional rights. *Id.*, ¶ 80. He states that defendants acted in bad faith in

failing to interview him or notify him as to the allegations. *Id.*, ¶ 81. Plaintiff claims that

the failure of defendants to implement the requirements of Alabama Administrative Code

§§ 660-5.34.05(1)(e)[5] and 660-5-34.05(4)(j)[6] resulted in violations of his constitutional

rights.

---

[5] (1) The following standards for conducting CA/N assessments on child abuse/neglect reports must be followed. Any deviations from these standards must have supervisory consultation and approval.

…

> (e) Interview with the Person Allegedly Responsible For Abuse/Neglect. The worker is to interview the person allegedly responsible individually and in person unless the person is being criminally investigated, and law enforcement, the District Attorney's office or the defense attorney refuses to allow the interview. A copy of the person's statement to law enforcement is then sufficient to document this part of the CA/N assessment.

Ala. Admin. Code § 660-5-34-.05(1)(e).

[6] (4) Additional Procedures for CA/N Assessments Involving Out-of-Home Care Settings.

> (j) Schools And Allegations Involving Discipline/Corporal Punishment
> 1. Law enforcement agencies conduct the investigation on CA/N reports where the person responsible for abuse/neglect is a public or private school teacher or other school official and the allegations involve discipline or corporal punishment.
> 2. If law enforcement determines the incident was consistent with the board of education's written discipline policy, the allegations are not considered a CA/N report and the report is not entered into the Central Registry. When law enforcement determines the incident was not consistent with established discipline policy, they may investigate the incident as child abuse/neglect. Violation of school board policy does not necessarily indicate that child abuse has occurred. Child welfare staff in the county where the school is located are responsible for entering these CA/N reports into the Central Registry after law enforcement confirms that the report will be or has been investigated as child abuse.
> 3. Child welfare staff shall provide the person responsible for abuse/neglect with written notice of the disposition and the opportunity for a CA/N hearing. If due process rights are waived, child welfare staff shall then provide notification of the final disposition to the school principal or superintendent. If a CA/N hearing is held, the Hearing Officer will provide written notification of the disposition to the person responsible for abuse/neglect, and child welfare staff shall then notify the school principal. If the school principal was identified as the person responsible for the abuse/neglect, the notification must be sent to the superintendent of the Board of Education.

B.      State Law Claims

In count four, plaintiff sues all defendants for negligence. *Id.*, ¶¶ 85–89. He claims that the DHR defendants were negligent in failing to discharge their duties as set forth in DHR regulations and in Alabama Administrative Code § 660-5-34. *Id.*, ¶ 86. He alleges that the Phenix BOE defendants and school official defendants acted negligently and beyond their authority when the school official defendants reported an incident of child abuse to DHR without a proper investigation, and failed to respond appropriately to prior reports of K.U.'s violent and sexually harassing behavior. *Id.*, ¶ 87. Plaintiff alleges that the school official defendants brought in a third party to evaluate and assess K.U. prior to the incident involving plaintiff. *Id.*, ¶ 88.

In count five, plaintiff sues the Phenix BOE defendants and school official defendants for breach of the duty of care to provide a safe work environment. *Id.*, ¶¶ 90–92. He alleges that defendants had knowledge of K.U.'s problematic behavior and failed to address the situation. *Id.,* ¶ 91. Following plaintiff's formal letter notifying defendants of K.U.'s conduct, plaintiff's employment contract was not renewed. *Id.*

In count six, plaintiff sues the Phenix BOE defendants and school official defendants for breach of contract. *Id.*, ¶¶ 93–95. He states that these defendants breached their duty to contract in good faith and deal fairly with him when they failed to take any

---

4. Principals/superintendents may be notified about "indicated" dispositions prior to a CA/N hearing if the safety of children in the school would be jeopardized by withholding that information.

Ala. Admin. Code § 660-5-34-.05(4)(j).

safety measures after being notified of K.U.'s violent behavior. *Id.,* ¶¶ 94–95. In counts four, five, and six, he alleges that defendants' actions and omissions resulted in injuries to him, including serious emotional distress, loss of property and employment, humiliation, embarrassment, and damage to reputation. He seeks compensatory and punitive damages, along with attorneys' fees and costs. *Id.*, ¶¶ 89, 92, 95.

Plaintiff sues the Phenix BOE and school official defendants for premises liability in count seven. *Id.*, ¶¶ 96–105. He alleges that he was an employee-invitee on the school premises for the purpose of performing his duties as a teacher and employee. *Id.*, ¶ 97. He alleges that defendants knew or should have known of the unreasonably dangerous situation that existed, but they failed to correct the condition or to warn plaintiff of it. *Id.*, ¶¶ 98–99. Plaintiff alleges that, as a result of defendants' negligence, he suffered severe personal injuries, including trauma to his heart. *Id.*, ¶ 101. He claims both physical and psychological damages. *Id.*, ¶ 103.

In count eight, plaintiff's wife sues all defendants for loss of consortium due to the injuries sustained by plaintiff. *Id.*, ¶¶ 106–107.

## V.   <u>Defendants' Motions</u>

Pending before the court are three motions to dismiss with supporting briefs filed by defendants. *See* Docs. 63–68. Plaintiffs filed a response in opposition, *see* Doc. 70, and defendants replied, *see* Docs. 71, 74, 75.

### A.   *School Official Defendants' Motion*

Superintendent Randy Wilkes, principal Thomas Vickers, assistant principal Jason Sasser, assistant principal Antonio Griffin, special education coordinator David Jones, and

director of special services Bonnie Burns (the school official defendants) move to dismiss the second amended complaint for failure to state a cause of action pursuant to Fed. R. Civ. P. (12)(b)(6) and on the basis of qualified immunity and state-agent immunity. (Docs. 63, 64). Plaintiffs respond that they have pled sufficient facts demonstrating the school official defendants' liability, including allegations regarding the school official defendants' knowledge of the specific safety concerns involving K.U. and their failure to act on these concerns because K.U. could "cause trouble for the school." Plaintiffs contend that qualified immunity does not preclude suit against the school official defendants because they violated the clearly established substantive due process right of bodily integrity. Plaintiffs argue that state-agent immunity does not apply because the school official defendants are not agents of the state, but, even if they are, their actions were willful, malicious, and in bad faith, which prevents application of the state-agent immunity doctrine.

B.    *Russell County DHR Defendants' Motion*

Russell County Department of Human Resources, Director Jan Casteel, and case worker Kimberly Price (the DHR defendants) seek dismissal of the second amended complaint on the basis of immunity, arguing that the Russell County DHR is entitled to Eleventh Amendment immunity, and Price and Casteel are protected by qualified immunity. (Docs. 65, 66). The DHR defendants additionally argue that sections 660-5.05(1)(e) and 660-5-34.05(4)(j) of the Alabama Administrative Code are inapplicable here because these rules pertain to abuse of children under the age of 18 years, and K.U. was 19 years old on the date of the incident. Price is an adult protective services worker whose

investigations are governed by Ala. Admin. Code section 660-5-41.04. Further, the DHR defendants contend that there can be no due process violation because plaintiff requested and was granted an administrative hearing, in which he prevailed. Regarding Casteel's liability, defendants argue that any claim against her is due to be dismissed because she was sued in her individual capacity and she was not employed by Russell County DHR at the time of the alleged events. Price argues that plaintiff fails to establish either a duty or proximate cause in order to give rise to liability against her for the state law claims.

In response, plaintiffs concede that Russell County DHR is an "arm of the state" that enjoys Eleventh Amendment immunity from suit and has not waived its immunity or consented to be sued. Additionally, plaintiffs concede that Russell County DHR is not a "person" subject to suit under section 1983. Lastly, plaintiffs acknowledge that they cannot recover punitive damages against state agencies or municipalities. Regarding Price and Casteel, plaintiffs argue that they acted willfully, maliciously, and in bad faith in failing fully investigate the allegations of child abuse fully. Plaintiffs submit that it shocks the conscience that the investigators could make a determination of "indicated" without interviewing the alleged abuser. Such conduct, they submit, precludes application of qualified or state-agent immunity.

C.    *Phenix BOE Defendants' Motion*

The Phenix City Board of Education, board president Paul Stamp, board vice president Mesha Patrick, and board members Patricia Alexander, Brady Baird, John Donohue, Fran Ellis, and Will Lawrence (the Phenix BOE defendants) move to dismiss the second amended complaint for failing to state a claim against them and on the basis of

14

immunity. (Docs. 67, 68). They submit that the Phenix BOE has state and federal immunity from plaintiffs' claims. As to the individual board members, they maintain that they are absolutely immune in their official capacities and are protected by qualified immunity and state-agent immunity in their individual capacities. Moreover, the Phenix BOE defendants argue that plaintiffs fail to assert any allegations of constitutional violations or wrongful conduct by the individual board members sufficient to invoke an exception to immunity. Finally, the Phenix BOE contends that plaintiffs fail to allege facts supporting a violation of Ronnie Elverton's Fourth and/or Fourteenth Amendment rights, nor do plaintiffs identify a policy or practice that caused a violation of his rights.

Plaintiffs concede they are suing the individuals in their individual capacities only. (Doc. 70 at 4). Plaintiffs argue that state-agent immunity does not apply to breach of contract actions. Additionally, plaintiffs contend that the Phenix BOE was not acting as an arm of the state for Eleventh Amendment immunity purposes and the board members are not state agents. (Doc. 70).

## VI.   **Discussion**

A.   *Eleventh Amendment Immunity*

The Eleventh Amendment provides immunity by restricting federal courts' judicial power:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI. It is well-settled that Eleventh Amendment immunity bars suits brought in federal court when the State itself is sued or when an "arm of the State" is sued. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). To receive Eleventh Amendment immunity, a defendant need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997). "In determining whether an entity is an arm of the state sharing the state's Eleventh Amendment immunity, we look to the entity's function and characteristics as determined by state law." *Brown v. E. Cent. Health Dist.*, 752 F.2d 615, 617 (11th Cir. 1985) (citations omitted).

"Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state…but generally does not extend to counties or county agencies,…or to municipalities or municipal agencies, …[unless] a county or municipality acts as an agent of the state[.]" *Ex parte Tuscaloosa County*, 796 So.2d 1100, 1103 (Ala. 2000) (internal citations omitted). Here, the Russell County DHR and Phenix BOE assert that they are acting as agents of the state who have not consented to be sued, and therefore they enjoy absolute immunity. Thus, the question before the court turns on whether Russell County DHR and Phenix BOE are to be treated as arms of the state.

### 1. Russell County DHR

Plaintiffs do not dispute that Russell County DHR acts as an agent of the State and is entitled to Eleventh Amendment immunity. *See* Doc. 70 at 5.

On the federal claims, plaintiffs additionally concede that they cannot maintain a § 1983 action against the Russell County DHR. *See id.* Russell County DHR is an entity, not a "person," and therefore not subject to suit under section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").[7] Accordingly, the motion to dismiss (Doc. 65) is due to be granted as to all claims asserted against defendant Russell County Department of Human Resources.

### 2.    Phenix BOE

Plaintiffs dispute Phenix BOE's entitlement to Eleventh Amendment immunity. The applicability of Eleventh Amendment immunity to an Alabama county school board was addressed by the Eleventh Circuit in *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1511 (11th Cir. 1990). *Stewart* involved a former employee's claim against an Alabama county board of education (and others) under 42 U.S.C. § 1983. *Id.* The *Stewart* court concluded that the county board of education was not an "arm of the State" for purposes of Eleventh Amendment immunity. In so holding, the court considered the way in which state law defines the entity, the degree of state control over the entity, and the entity's fiscal autonomy. *Id.* at 1509. The Eleventh Circuit later reiterated and elaborated on this test in *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003), stating, "[i]n Eleventh Amendment cases, this Court uses four factors to determine whether an entity is an 'arm

---

[7] Plaintiffs have not sued any of the individuals in an "official" capacity, but if they had, an action under § 1983 would not lie against the individuals in their official capacities. *See Will*, 491 U.S. at 71.

of the State' in carrying out a particular function: (1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309.

Plaintiffs rely on *Stewart* and its progeny to argue that the Phenix BOE cannot avail itself of Eleventh Amendment immunity here. The Phenix BOE responds that the Alabama Supreme Court in *Ex Parte Hale County Board of Education*, 14 So. 3d 844 (Ala. 2009), declared absolute constitutional immunity for boards of education in breach of contract actions.[8] However, even though the way in which state law categorizes an entity is an important factor in the analysis, "the ultimate authority for resolving a particular entity's 'arm of the state' status is one of federal law, not state law." *Weaver v. Madison City Bd. of Educ.*, 947 F. Supp. 2d 1308, 1315 (N.D. Ala. 2013), report and recommendation adopted, No. 5:11-CV-3558-TMP, 2013 WL 4433799 (N.D. Ala. Aug. 14, 2013), *aff'd sub nom. Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748 (11th Cir. 2014) (citing *Stewart*,

---

[8] The Alabama Supreme Court has ruled similarly in numerous subsequent decisions. *See Ex parte Montgomery Cty. Bd. of Educ.*, No. 1170733, 2018 WL 4090655, at *2 (Ala. Aug. 24, 2018) (county board of education had sovereign immunity from action against it by elementary school student damages arising from an alleged assault on student by school employee); *Ex parte Jackson Cty. Bd. of Educ.,* 164 So.3d 532 (Ala. 2014) (holding that county board of education was entitled to sovereign immunity); *Ex parte Bessemer City Bd. of Educ.*, 143 So.3d 726 (Ala. 2013) (holding that a claim against a school board arising from an alleged assault on a student was due to be dismissed on State immunity grounds); *Ex parte Phenix City Bd. of Educ.*, 67 So.3d at 56, 59-60 (Ala. 2011) (holding that city boards of education are local agencies of the State and enjoy constitutional immunity from tort actions); *Ex parte Monroe Cty. Bd. of Educ.*, 48 So.3d 621, 625 (Ala. 2010) (holding that county board of education "is a local agency of the State that has absolute immunity under Ala. Const. of 1901, § 14"); *but see Ex parte Madison Cty. Bd. of Educ.*, 1 So. 3d 980 (Ala. 2008) (board of education was not an arm of the State for the purposes of § 1983 liability and was not entitled to Eleventh Amendment immunity). As observed by the Eleventh Circuit, "[t]hat Alabama state courts provide county boards of education with sovereign immunity in state tort law actions does not require a similar treatment under the Eleventh Amendment." *Stewart*, 908 F.2d at 1510 n.6 (citing cases).

908 F.2d at 1509). Relying on binding Eleventh Circuit precedent in *Stewart,* and an analysis of the four-factors test, the *Weaver* court concluded that the Madison City board of education was not entitled to Eleventh Amendment immunity. *Weaver*, 947 F. Supp. 2d at 1314–16. The *Weaver* court observed:

> Since *Stewart*, courts in the Eleventh Circuit, and particularly district courts in Alabama, have consistently found that local boards of education are not protected by the Eleventh Amendment as "arms of the State." Rather, there is a consistent line of authority holding them to be local political subdivisions, comparable to counties and municipalities.

*Id.* at 1319 (citing *Does 1, 2, 3, 4 v. Covington Cty. Sch. Bd*., 969 F. Supp. 1264, 1273 n. 5 (M.D. Ala. 1997); *Kendrick v. Jefferson Cty. Bd. of Educ*., 932 F.2d 910 (11th Cir.1991); *M.R. v. Bd. of School Comm'rs of Mobile Cty.*, 2012 WL 2931263, *3 n. 8 (S.D. Ala. July 18, 2012)); *see also The Jefferson Cty. Bd. of Educ. v. Bryan M*., 133 F. Supp. 3d 1359, 1364–65 (N.D. Ala. 2015) (declining to find board of education entitled to immunity on § 1983 claim because, under Alabama law, local school boards function as largely self-contained entities, voters in each county determined composition of local school board, and school board determined its own educational policy and prescribed rules and regulations for schools in its jurisdiction); *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1315 (11th Cir.2005) (holding that "state sovereign immunity principles are no bar to § 1983 claims against a county").

"To the extent that [a state's] law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional violations, that disagreement cannot override the dictates of federal law."

*Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 377–78 (1990). Eleventh Circuit case law has routinely found that local boards of education are not protected by the Eleventh Amendment as "arms of the State." Applying the *Stewart* and *Manders'* three or four-factor test to the issues here yields a similar result. The first factor considers how the state defines the entity. "Within the first factor the court also weighs how state statutes treat the particular entity." *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 754 (11th Cir. 2014) (citation omitted). The Alabama Code provides that "[t]he general administration and supervision of the public schools and educational interest of each city shall be vested in a city board of education, to be composed of five members who shall be residents of the city, and who shall not be members of the city council or commission." ALA. CODE § 16-11-2. A city board of education is "vested with all the powers necessary or proper for the administration and management of the free public schools within such city." ALA. CODE § 16-11-9. These statutes indicate that a certain level of autonomy vested in city boards of education. Next, courts consider the degree of control the State maintains over the entity in carrying out a particular function. The function at issue here is the Phenix BOE's approval of a student code of conduct that it allegedly failed to implement. (Doc. 60, ¶¶ 27, 53). Again, Alabama law vests power in the city boards at the local level for promulgation and enforcement of school rules and regulations:

> The local [city or county] board of education shall, upon the written recommendation of the chief executive officer,[9] determine and establish a written educational policy for the board of education and its employees and shall prescribe rules and regulations for the conduct and

---

[9] The "chief executive officer" is defined as "[t]he superintendent of any public county or public city school system." ALA. CODE § 16-1-30(a)(2).

> management of the schools. Before adopting the written policies, the
> board shall, directly or indirectly through the chief executive officer,
> consult with the applicable local employees' professional organization.
> Input by the applicable professional organization shall be made in
> writing to the chief executive officer. Representatives of the
> professional organization shall be made known to the chief executive
> officer in writing by the professional organization's duly elected
> officers or their representative. The chief executive officer of the board
> may also consult with professional assistants, principals, employees,
> and other interested citizens. The written policies, rules, and
> regulations, so established, adopted, or promulgated shall be made
> available to all persons affected and employed by the board. Any
> amendments to the policies, rules, and regulations shall be developed
> in the same manner and furnished to the affected persons employed by
> the board within 20 days after adoption.

ALA. CODE § 16-1-30(b). Regarding fiscal autonomy, the Eleventh Circuit has found that

school boards have "a substantial amount of control over their own affairs," including

"fiscal autonomy," which is evidenced by their ability to raise local funds and "the power

to establish general education policy for the schools." *Stewart*, 908 F.2d at 1510–11. Thus,

based on Eleventh Circuit precedent and the test articulated in *Stewart* and *Manders*, the

court concludes that the Phenix BOE may not avail itself of Eleventh Amendment

immunity from suit against it in this court.

B.   *Federal Claims Fail to State Cause of Action*

Plaintiff alleges three federal claims against defendants pursuant to 42 U.S.C. §

1983. Notwithstanding the above conclusion that the Phenix BOE is not entitled to

Eleventh Amendment immunity, the federal claims against the Phenix BOE are due to be

dismissed for failure to state a claim. As discussed below, plaintiff's allegations fail to

establish a constitutional violation by any of the defendants to support a cause of action

under section 1983 and, thus, the federal claims in counts one, two, and three are due to be dismissed.

### 1.    No Fourth or Fourteenth Amendment Violation

To state a claim under section 1983, a plaintiff must allege facts constituting a deprivation of a constitutional right, under color of state law. 42 U.S.C. § 1983. Here, plaintiff asserts that defendants deprived him of his Fourth and Fourteenth Amendment rights. The Fourth Amendment to the United State Constitution provides that "the right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. Amend. IV. Plaintiff generally alleges that defendants' actions constitute unreasonable seizures and detentions in violation of the Fourth Amendment, but nowhere in the second amended complaint does he identify any actual seizure or detention. To the contrary, plaintiff alleges that after K.U. pushed him up against the classroom wall and punched him, plaintiff "acted quickly and held K.U. restrained until the other teachers in the room could get over to him and assist[.]" (Doc. 60, ¶ 40). Plaintiff does not allege that he himself was searched or detained. Other than the conclusory statement that "[d]efendants' actions and inactions constitute unreasonable seizures and detentions in contravention of the Fourth Amendment," *see* Doc. 60, ¶ 65, he fails to allege any facts showing that defendants engaged in an unreasonable search, seizure, or detention. Thus, plaintiff fails to state a cause of action for a constitutional violation against defendants under the Fourth Amendment.

Plaintiff further alleges that defendants' actions constituted a deprivation of his liberty without due process of law in violation of the Fourteenth Amendment. *Id.*, ¶ 66.

Courts in this circuit have recognized that "substantive due process rights under the Fourteenth Amendment include a right to bodily integrity." *Thomas v. City of Clanton*, 285 F. Supp. 2d 1275, 1280–81 (M.D. Ala. 2003); *see also*, *Romero v. City of Clanton*, 220 F.Supp.2d 1313, 1316 (M.D. Ala. 2002); *Johnson v. Cannon*, 947 F. Supp. 1567, 1572–73 (M.D. Fla. 1996); *Battista v. Cannon*, 934 F. Supp. 400, 404 (M.D. Fla. 1996). The Fourteenth Amendment does not, however, create a duty to protect from third parties. As explained by the Eleventh Circuit:

> "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't. of Soc. Servs.*, 489 U.S. 189, 195 (1989). Rather, "[t]he Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security," and only "in certain limited circumstances [does] the Constitution impose[ ] upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 195, 198, 109 S.Ct. at 1003, 1004. Those circumstances exist where the State acts to restrain an individual's personal liberty and ability to self-protect, such as where the individual is incarcerated or institutionalized. *Id.* at 198–200, 109 S.Ct. at 1004–05.

*Worthington v. Elmore Cty. Bd. of Educ.*, 160 F. App'x 877, 881 (11th Cir. 2005). K.U. is not a state actor, and his punching plaintiff does not establish the requisite *constitutional* violation by defendants to state a § 1983 claim.

The Eleventh Circuit has explained the showing necessary to hold an official individually liable for a substantive due process violation as follows:

> [P]laintiffs face a high bar when attempting to establish a substantive due process violation as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell* [*v. Hendry Cty. Sheriff's Ofc.*, 329 F.3d 1300, 1305 (11th Cir. 2003)].

> Even intentional wrongs seldom violate the Due Process Clause, *id.*, and "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,' " *Cnty. of Sacramento* [*v. Lewis*, 523 U.S. 833, 846 (1998)] (quoting *Collins*, 503 U.S. at 129, 112 S.Ct. at 1071). "Determinations of what is egregious conduct must not be made in the glow of hindsight; decisions made by a government actor must be egregious—that is, shock the conscience—at the time the government actor made the decision." *Waddell*, 329 F.3d at 1305. Conduct intended to injure in some way that is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level, *id.*, and we must conduct an "exact analysis of circumstances before any abuse of power is condemned as conscience shocking," *Cnty. of Sacramento*, 523 U.S. at 850, 118 S.Ct. at 1718–19.

*Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013). As to Price and Casteel, plaintiff alleges that they did not conclude their report and investigation within seven days as required by Alabama law. As noted by defendants, *see* Doc. 71 at 5, plaintiff misconstrues the requirements of the statute. In addition, there is nothing in plaintiff's allegations regarding these defendants' conduct that would come close to "shocking the conscience." The same can be said for the conduct of the individual board members and school official defendants, whom plaintiff admits actually hired a third party to evaluate and assess K.U.'s behavior before the incident involving plaintiff occurred. Even assuming the veracity of all well-pled allegations in the second amended complaint, the court cannot conclude that the individual defendants' conduct was so egregious or shocking to the conscience to rise to the level of a constitutional violation.

## 2.    No Deliberate Indifference

Even if plaintiff could establish that a constitutional violation occurred, "in order to recover against a teacher or a school administrator under § 1983, a [plaintiff] must establish not only that he or she was deprived of a constitutional right, but also that the person who

deprived him or her of that right did so in bad faith or with deliberate indifference to his or her rights. *Ex parte Turner*, 840 So. 2d 132, 136 (Ala. 2002) (citations omitted). Attempting to show that that defendants acted with deliberate indifference to his rights, plaintiff alleges that the Phenix BOE defendants and school official defendants failed to implement and follow the rules and regulations set out in their student code of conduct.  (Doc. 60, ¶ 53). An alleged failure to comply with rules and regulations, however, does not establish the requisite actual notice and deliberate indifference necessary to establish a constitutional violation. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291–92 (1998). Moreover, "'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002); *see also White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999) ("While deliberate indifference to the safety of government employees in the workplace may constitute a tort under state law, it does not rise to the level of a substantive due process violation under the federal Constitution."). As referenced above, plaintiff alleges that prior to the incident, defendants "brought in a third party to evaluate/assess K.U. regarding his behavior." (Doc. 60, ¶ 88). Thus, plaintiff is not claiming that no steps were taken regarding K.U. Instead, plaintiff is alleging that defendants did not take the appropriate and required steps. "[A] school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective." *Sauls v. Pierce Cty. Sch. Dist.,* 399 F.3d 1279, 1285 (11th Cir. 2005). Because plaintiffs' allegations do not support a finding that there has been a

constitutional violation, the court recommends the motions to dismiss be granted as to plaintiffs' § 1983 claims.[10]

### 3.     No Policy or Custom

Municipal entities such as the Phenix BOE cannot be held liable on a theory of *respondeat superior. Sauls*, 399 F.3d at 1287. Rather, to impose liability on a municipal government under section 1983, "the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights." *Id.* (citation omitted). The Supreme Court has explained,

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.

*Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04 (1997) (internal citations omitted).

In count two of the second amended complaint, plaintiff sues all defendants except Price, alleging that they had a custom or policy of inadequate training and supervision that permitted Price to conduct an investigation without interviewing plaintiff and that resulted in an improper, incorrect and unfounded determination of "indicated." *See* Doc. 60 at 14. In count three, plaintiff claims that defendants implicitly or explicitly incorporated and

---

[10] This is plaintiffs' second amended complaint, and there is no reason to believe that further amendment would yield a different result. Accordingly, the court concludes that the dismissal of the federal claims should be with prejudice.

implemented a careless and reckless policy that included allowing Price to complete an investigation without interviewing all involved parties. *See id.* at 16–17. Notwithstanding these conclusory statements, nothing in plaintiff's allegations reflects the existence of such policy or custom. Plaintiff alleges that, in this one incident, Price did not interview plaintiff. Even considering these allegations in the light most favorable to plaintiff, a single incident does not establish a policy or custom. Moreover, plaintiff alleges that shortly after the incident, defendant Sasser called plaintiff and asked him to describe the incident. Thus, at a minimum, plaintiff was interviewed by Sasser. Additionally, plaintiff alleges that when Price came to his home, she spoke with him and then went to her car to retrieve the typewritten letter with a determination of "indicated." The implication of plaintiff's reference to the "typewritten letter" is that the decision was already made before Price spoke with plaintiff; however, plaintiff acknowledges that Price spoke with him before presenting the formal determination. Nothing in these allegations supports the conclusion that defendants had a widespread policy, practice, or custom of not interviewing all involved parties, and therefore, counts two and three are due to be dismissed for this reason, in addition to the reasons stated in sections B(1) and B(2) above.

D.   *Additional Reasons Supporting Dismissal of Federal Claims against Individuals*

   **1.   Qualified Immunity**

   Not only do plaintiff's allegations fail to state a claim under section 1983 against the individual defendants, but those individuals also are entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates 'clearly established

statutory or constitutional rights of which a reasonable person would have known.'"[11] *Gregory v. Miami-Dade Cty., Fla.*, 719 F. App'x 859, 866 (11th Cir. 2017) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009)). For qualified immunity to apply, the official asserting the defense must show that, at the time of the complained of conduct, he was acting within his discretionary authority." *Id.* (internal citations omitted). The burden then shifts to plaintiff to demonstrate that the officers are not entitled to qualified immunity. *See id.*

To demonstrate that a defendant's challenged actions were within the scope of his discretionary authority, a defendant must show that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). In considering a defendant's actions, courts undertake a two-fold inquiry, first asking whether the government employee was performing a legitimate job-related function, and second, whether it was through means that were within his power to employ. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994)).

a. Scope of Discretionary Duties

Plaintiff generally alleges that he notified school official defendants Wilkes, Vickers, Burns, Griffin, Sasser, and Jones regarding violent incidents involving K.U. and other students. He specifically alleges that Wilkes, Burns, Vickers, and Griffin were copied

---

[11] Plaintiffs do not dispute that the individual defendants are immune in their official capacities and acknowledge they are being sued in their individual capacities only. (Doc. 60 at 4).

on a March 2016 letter he wrote to Montray Thompson (who has not been sued) in which he relayed concerns about the volatile and dangerous behavior of students, T.R. and K.U. He states that he emailed Vickers, Griffin, and Wilkes regarding "dangerous situations" which had been caused by a few students in his classroom.[12]

Plaintiff further alleges that the school official defendants acted with deliberate indifference when they failed to follow their policies and procedures after receiving notice of K.U.'s violent tendencies, and failed to investigate the K.U. incident. He claims that school official defendants told him and other staff to overlook K.U.'s behavior because K.U.'s parents had a lawyer. The gist of the allegations are that had the school officials responded differently to the warnings regarding K.U., and had disciplined or better supervised K.U., then plaintiff would not have been hit by K.U.  The court finds that the school official defendants' actions or omissions regarding discipline and/or supervision fall within those officials' performance of discretionary duties. *See, e.g., Holloman*, 370 F.3d 1252 (principal's discipline of student was discretionary function); *Carroll ex rel. Slaught v. Hammett*, 744 So. 2d 906, 911 (Ala. 1999) (supervision of students is a discretionary function).

With regard to the Phenix board members, Plaintiff names Stamp, Patrick, Donahue, Alexander, Lawrence, Baird, and Ellis as defendants in their individual capacities. He alleges that the Phenix board members approved the student code of conduct, which expressly prohibits students from assaulting, threatening, or striking any school board

---

[12] Plaintiff does not specify when the email was sent, nor does he indicate whether K.U. was mentioned.

employee. He alleges generally that he notified the Phenix board members regarding the violent incidents of K.U. and other students. The only specific reference to a board member by plaintiff is his allegation that he spoke with Stamp on multiple occasions regarding dangerous situations that occurred in his classroom with a few students. He further complains that the Phenix board defendants failed to investigate the K.U. incident, in violation of their own policies and procedures.[13] The promulgation and enforcement of school rules and regulations would certainly fall within the scope of the board members' discretionary duties. *See* ALA. CODE § 16-1-30(b).

   b. Burden Shifts to Plaintiff

   Upon the court's determination that the school official defendants and the Phenix board members were acting within their discretionary authority, the burden then shifts to the plaintiffs to show that the grant of qualified immunity is inappropriate. *See McCullough*, 559 F.3d at 1205. To overcome qualified immunity, plaintiffs must show that (1) the officials "violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation." *Id.* (internal citations omitted). "Both elements of this test must be satisfied for an official to lose qualified immunity." *Gregory*, 719 F. App'x at 866 (quoting *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010)). "A district court is granted the flexibility to decide those issues in either order, but the plaintiff must satisfy both requirements in order to negate the defendants' qualified-immunity defense." *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Maddox*, 727 F.3d at

---

[13] Plaintiff does not identify what specific policy or procedure the Phenix board defendants violated.

1120–21; *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

"At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." *Ledea v. Metro-Dade Cty. Police Dep't*, 681 F. App'x 728, 729 (11th Cir. 2017) (quoting *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010)) (internal quotation marks omitted). "Whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Ledea,* 681 F. App'x at 729 (quoting *Iqbal*, 556 U.S. at 673 (internal quotation marks omitted)).

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, __ U.S. __ , 137 S.Ct. 548, 551(2017) (per curiam) (quoting *Mullinex v. Luna*, __ U.S. __, 136 S.Ct. 305, 308 (2015) (per curiam). "Whether the law is clearly established is not defined at 'a high level of generality.'" *Gregory*, 719 F. App'x at 868 (quoting *White*, 137 S.Ct. at 552 (quoting, in turn, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "For that reason, a clearly established right is one that is sufficiently clear that *every reasonable official* would have understood that what he is doing violates the right." *Gregory*, 719 F. App'x at 868 (internal quotation marks omitted) (emphasis in original) (quoting *Mullinex*, 136 S.Ct. at 308) (internal citations omitted)).

As discussed above, it was not clearly established that the actions of school officials or the Phenix board members violated a federal constitutional right in this case because the Fourteenth Amendment does not guarantee plaintiff the right of protection from non-State

actors. *See DeShaney*, 489 U.S. at 195–96. Plaintiff points to no case that holds otherwise. Accordingly, the court finds that the school official defendants, Phenix board members, Casteel, and Price are entitled to qualified immunity on plaintiff's federal claims.

### 2. Jan Casteel

Plaintiffs sue Jan Casteel as the director and supervisor of the Russell County DHR. Casteel was not an employee at the time of the alleged events, but rather succeeded Florence Bellamy who signed the letter "indicating" plaintiff for abuse. Plaintiffs allege that Bellamy signed the determination letter "in her supervisory capacity and her personal involvement with the investigation." (Doc. 60, ¶ 48). Bellamy is no longer employed with Russell County DHR, and plaintiffs name Casteel as the appropriate substituted party. Federal Rule of Civil Procedure 25 provides that "[a]n action does not abate when a public officer who is a party in an *official capacity* dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Fed. R. Civ P. 25(d) (emphasis added). However, Rule 25 does not apply here because Casteel is sued in her individual capacity, not her official capacity. Plaintiffs' second amended complaint is completely devoid of any allegations of acts or omissions by Casteel which might give rise to liability against her individually.

### 3. Bonnie Burns

Burns is neither named in the caption, nor in the first paragraph of the second amended complaint in which plaintiffs identify whom they are suing. *See* Doc. 60 at 1. Other than making a passing reference to Burns in paragraph thirteen stating that she is employed by the Phenix BOE as director of special services and "is being sued in her

individual capacity," *see id.* ¶ 13, plaintiffs do not allege any facts establishing Burns' liability.

E.    *State Law Claims*

Plaintiffs assert five state law claims against defendants for negligence (count four), breach of failure to provide a safe working environment (count five), breach of contract (count six), premises liability (count seven), and loss of consortium (count eight). Although plaintiffs' state law claims may be barred on the basis of sovereign immunity, *see* n.8, *infra*, and state-agent immunity, *see Hill v. Cundiff*, 797 F.3d 948, 980–81 (11th Cir. 2015); *Ex Parte Cranman*, 792 So.2d 392 (Ala. 2000), these matters are better left for the state courts. This court need not reach those issues, as dismissal of the federal claims divests the court of original jurisdiction. Diversity jurisdiction does not exist where, as here, both plaintiffs and defendants are Alabama citizens.

The court could exercise jurisdiction over the state law claims based on supplemental jurisdiction pursuant to 28 U.S.C. section 1367. However, in the event that this recommendation is adopted, and the district judge "dismisse[s] all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over the state law claims. *See* 28 U.S.C. § 1367(c)(3). The common law claims raise important issues of state law that a state court should address. To promote judicial economy and comity, the undersigned recommends that the court decline to exercise supplemental jurisdiction over plaintiffs' state law claims and allow plaintiffs to pursue those claims in state court. *See* 28 U.S.C. § 1367(d).

VII.    **Recommendation**

For the reasons discussed above, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Wilkes, Vickers, Sasser, Griffin, Jones, and Bonnie Burns' motion to dismiss counts one, two, and three (Doc. 63) be GRANTED;

2.      Russell County DHR, Price, and Casteel's motion to dismiss counts one, two, and three (Doc. 65) be GRANTED;

3.      All claims against the Russell County DHR be DISMISSED with prejudice based on plaintiffs' concessions;

4.      The Phenix BOE, Stamp, Patrick, Alexander, Baird, Donahue, Ellis, and Lawrence's motion to dismiss counts one, two, and three (Doc. 67) be GRANTED;

5.      The state law claims (counts four through eight) against all defendants (except Russell County DHR) be DISMISSED without prejudice due to lack of jurisdiction; and

6.      The case be DISMISSED.

## VIII.  <u>Notice to Parties</u>

It is hereby **ORDERED** that **on or before February 28, 2019**, plaintiffs may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the plaintiffs object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the

right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 14th day of February, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge